# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

STANLEY KIELMAR, et al.,

        Plaintiffs,

v.     Case No. 20-CV-798

ERIE INSURANCE COMPANY,

        Defendant.

## FINAL PRETRIAL ORDER

On April 8, 2022, the court held a final pretrial conference. Appearing for the plaintiffs Stanley and Myriam Kielmar were attorneys Joshua Greatsinger and John Mayer. Appearing for the defendant Erie Insurance Company was attorney Michael Wirth.

A jury trial is scheduled to begin on May 23, 2022. The court has set aside five days for trial.

Based on the court's consideration of the parties' pretrial reports and the statements of counsel, for the reasons more fully stated on the record, the court enters the following Order, which shall govern the trial in this matter:

A. A seven or eight-person jury will be selected. Its verdict shall be unanimous.

B. The court will conduct the voir dire of the entire pool. Following voir dire, the court will entertain motions to strike for cause. From the first 13 remaining prospective jurors the parties will each exercise three peremptory strikes per side to arrive at a final seven-person jury.

C. The jurors will not be permitted to ask questions of witnesses.

D. The jurors will be permitted to take notes.

E. The parties shall prepare a single joint exhibit list. The exhibits shall be numbered sequentially. No exhibit shall be listed more than once. Any "compilations" of exhibits should be broken out so that each exhibit is individually numbered. Parties should consider whether lengthy exhibits can be limited to only the portions that are relevant and that the party will seek to admit.

F. Exhibits shall be compiled into tabbed binders. One set shall be for the court; one set will be for the witness; and then as many sets as the parties desire for their personal use. The set for the witness will be the "official" set that will be received by the court.

G. All exhibits received in evidence will be sent to the jury room during jury deliberation unless a specific objection to the exhibit or portion thereof is raised by a party following the conclusion of the trial. The jury will receive a copy of

the jury instructions, and each juror will receive a copy of the special verdict for their deliberations.

H. If a party wishes to publish an exhibit to the jury, the party must use demonstrative means to make that the exhibit is visible to all jurors simultaneously and/or provide each juror with a paper copy of the exhibit.

I. Upon request, made at least one week before trial, the court should be able to provide any of the following technology: a projector that may be connected to counsel's laptop computers; a screen; and a document camera (*e.g.*, an Elmo). Parties wishing to use any additional technology must provide it themselves. Parties should contact the court's deputy clerk at 414-297-3964 or linda_zik@wied.uscourts.gov with any questions to make arrangements regarding court-supplied technology or to schedule a time to set up or test any hardware.

J. Each party is responsible for ensuring the appearance of any witness the party intends to call to testify.

K. Only a single attorney for each party shall examine or cross-examine any individual witness.

L. Only if absolutely necessary are parties to ask for a side-bar conference if the jury is present. Ordinarily, if additional argument or explanation is necessary

regarding an objection, the objection should be raised, and the party should request to be heard at the next break.

M. Trial days shall begin at 8:30 A.M., with a break in the morning, roughly one hour for lunch, an afternoon break, and court will adjourn for the day at 5:00 P.M.

N. Currently, masks are not required in the courthouse. *See* General Order Regarding COVID-19 Mask Policy (March 7, 2022), available at https://www.wied.uscourts.gov/news/update-general-order-regarding-covid-19-mask-policy-1. Requirements for masking in the public areas of the courthouse vary depending on the Centers for Disease Control and Prevention's COVID-19 Community Levels, and therefore masking requirements may change between now and trial. Parties should review the court's website, www.wied.uscourts.gov, for current protocols. Even if masks become required in the public spaces in the building, the court does not anticipate requiring masks in the courtroom.

O. As to the defendant's motion in limine to limit the testimony of the plaintiffs' experts to the opinions stated in their reports (ECF No. 44 at 1-3), the motion is denied. Neither David Miller nor Paul Hausz was "retained or specially employed" to provide expert testimony in the case. *See* Fed. R. Civ. P 26(a)(2)(B). Neither Miller nor Hausz are party employees whose duties

regularly involve giving expert testimony. *See id.* Therefore, Miller and Hausz fall outside of Rule 26(a)(2)(B) and are not required to provide Rule 26(2)(B) written reports. *See Ven Housen v. Winnebago Indus., Inc.*, No. 20-CV-1097, 2021 WL 3721847, at *1 (E.D. Wis. Aug. 23, 2021). Instead, they are subject "to the to the more lenient disclosure obligations of Rule 26(a)(2)(C), needing only to disclose the subject matter on which they are expected to present evidence and a summary of the facts and opinions to which they are expected to testify." *See id.* The Kielmars have satisfied those disclosure obligations. (*See* ECF No. 29-11.) Consequently, Miller and Hausz cannot be prohibited from "testifying as to the existence or cause of any damage to the Kielmars' roofs." (ECF No. 44 at 3.) Erie's motion in limine seeking such a prohibition is denied as a result.

P. As to the defendant's motion in limine to limit the plaintiffs' bad faith claim to the elements of the insurance claim raised before suit (ECF No. 44 at 3-5), the motion is denied. An insurer must assess a claim through "appropriate and careful investigation." *See Poling v. Wisconsin Physicians Serv.*, 120 Wis. 2d 603, 608, 357 N.W.2d 293, 297 (Ct. App. 1984). It makes sense that the insurer has this obligation: the insurer has expertise that the insured likely does not have. Indeed, the insured cannot be expected to identify hail damage herself—it is sometimes "barely discernable." *Cf. Advance Cable Co., LLC v. Cincinnati Ins. Co.*, 788 F.3d 743, 745 (7th Cir. 2015). As the Kielmars note, "Erie understood and

agreed hail struck the Kielmars' property and should have taken the time to investigate and evaluate damage to all exterior buildings and exterior personal property during its initial inspection." (ECF No. 54 at 4.) Moreover, Erie had notice that "other items [] may have been damaged by hail" before litigation began. (*See* ECF No. 29-9.) It had the opportunity to investigate that damage but declined to do so. (ECF No. 54 at 7; *see also* ECF No. 31, ¶ 15.) Erie's motion in limine to limit the Kielmars' bad faith claim to the house and garage roofs is denied as a result.

Q. As to the defendant's motion in limine to limit the plaintiffs' recovery to functional damage (ECF No. 44 at 5-8), the motion is denied. The Seventh Circuit Court of Appeals has explained that under Wisconsin law cosmetic damage to a roof caused by a hailstorm can be considered "direct physical loss" to the property. *Windridge of Naperville Condo. Ass'n v. Philadelphia Indem. Ins. Co.*, 932 F.3d 1035, 1040 n.4 (7th Cir. 2019) (citing *Advance Cable Co., LLC*, 788 F.3d at 746–47); *see also Welton Enterprises, Inc. v. Cincinnati Ins. Co.*, No. 13-CV-227, 2015 WL 5567983, at *1 (W.D. Wis. Sept. 22, 2015) (interpreting *Advance Cable Co., LLC*, 788 F.3d 743). There is no dispute that hail damaged at least some of the Kielmars' property. Even assuming that the damage was cosmetic "without any functional damage that would cause a loss," there was still damage to the property. That the damage may have been "minor does not alter

the fact that it is still a tangible alteration" to the property. *Advance Cable Co., LLC v. Cincinnati Ins. Co.*, No. 13-CV-229, 2014 WL 975580, at *11 (W.D. Wis. Mar. 12, 2014), clarified on denial of reconsideration, No. 13-CV-229, 2014 WL 2808628 (W.D. Wis. June 20, 2014), and aff'd, 788 F.3d 743 (7th Cir. 2015). Indeed, it is not as if the Kielmars' policy states that the "damage must reach some level of severity to trigger the coverage threshold." *Id.*; (*see* ECF No. 29-1; *see also* ECF No. 54 at 5.)

That "direct physical loss" excludes cosmetic damage could be considered a "remotely plausible second interpretation" of the policy's language. *Advance Cable Co., LLC*, 2014 WL 975580, at *11 (internal citations omitted). That would leave this court with two plausible interpretations of "direct physical loss" to choose from: that it includes cosmetic damage or that it does not. Under Wisconsin law, this court would be obligated to construe such ambiguities against the insurer, attempting "to determine 'what a reasonable person in the position of the insured would have understood the words of the policy to mean.'" *Badger Mut. Ins. Co. v. Schmitz*, 2002 WI 98, ¶ 51, 255 Wis. 2d 61, 83, 647 N.W.2d 223, 234 (quoting *Taylor v. Greatway Ins. Co.*, 2001 WI 93, ¶ 10, 245 Wis. 2d 134, 142, 628 N.W.2d 916, 920). As the Kielmars argue, that "direct physical loss" includes cosmetic damage is in keeping with what a reasonable person in their position would have understood that phrase to

mean. (ECF No. 54 at 6.) Therefore, for the reasons explained above, Erie's motion in limine to limit the Kielmars' recovery to functional loss is denied.

R. As to the defendant's motion in limine to determine reasonable attorney fees in a post-trial motion if the jury finds the defendant liable for bad faith (ECF No. 44 at 8-9), the motion is granted.

**SO ORDERED.**

Dated at Milwaukee, Wisconsin this 11th day of April, 2022.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge